Steven T. Lovett, OSB No. 910701
steve.lovett@stoel.com
Rachel C. Lee, OSB No. 102944
rachel.lee@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380
Facsimile: 503.220.2480

    Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| PARCELSHIELD, LLC, an Oregon limited liability company, SUNAGO SYSTEMS, INC., an Oregon corporation, and G. SCOTT KNIGHT, an Oregon resident,<br><br>    Plaintiffs,<br><br>    v.<br><br>DAWSON GROUP, INC. an Illinois corporation,<br><br>    Defendant. | Case No.: 6-18-cv-1433<br><br>COMPLAINT FOR DECLARATORY JUDGMENT<br><br>DEMAND FOR JURY TRIAL |

    ParcelShield, LLC ("ParcelShield"), Sunago Systems, Inc. ("Sunago"), and G. Scott Knight ("Knight") (collectively "Plaintiffs") seek a declaratory judgment of unenforceability of Section 4 of the May 24, 2017 Settlement Agreement between Plaintiffs and Sunago Systems

Group, LLC, on the one hand, and Defendant Dawson Group, Inc. ("Dawson") on the other. Plaintiffs hereby allege as follows:

## I. PARTIES

1. ParcelShield is a limited liability company organized and existing under the laws of the State of Oregon, with its principal place of business in Redmond, Oregon. The lone member of ParcelShield is Sunago.

2. Sunago is a corporation organized and existing under the laws of the State of Oregon, with its principal place of business in Redmond, Oregon.

3. Knight is an individual residing in Bend, Oregon.

4. Dawson Group is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business at 2220 State Road 157, Glen Carbon, Illinois 62034.

## II. JURISDICTION AND VENUE

5. Under 28 U.S.C. § 1332 this Court has subject-matter jurisdiction over this civil action because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

6. This Court may declare the rights and legal relations of the parties in this action pursuant to 28 U.S.C. § 2201 because the action presents an actual case or controversy within the Court's jurisdiction.

7. This Court has personal jurisdiction over Defendant because, among other things, Defendant engaged in business dealings with Plaintiffs in Oregon as described below and then entered into the contract that is the subject of this action, which requires continued performance in Oregon for the benefit of Defendant now and well into the future.

Page 2   -   COMPLAINT FOR DECLARATORY JUDGMENT

97739803.1 0099865-10007

8.  Venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred here.  28 U.S.C. § 1391(b)(2).  These events or omissions include but are not limited to the following:  (1) Plaintiffs, who are located in Oregon, are prohibited by the contract from providing services to specified customers; (2) Plaintiffs' decisions not to pursue and provide services to the prohibited customers are or would be made in Oregon; and (3) the services that the contract prohibits Plaintiffs from providing to the specified customers will be or would have been provided from Oregon.

### III.  FACTUAL ALLEGATIONS

**A.    Plaintiffs' Businesses.**

9.  Plaintiff Sunago offers software as a service to companies in a variety of industries that ship packages that must be monitored for potential delivery delays.  Sunago's business focuses on cloud-based analytics and auditing tools, which allow companies to track shipping data in a way that optimizes their business.

10.  Plaintiff ParcelShield supplies automated parcel management services to large and small specialty pharmacies using Sunago's predictive analytics, machine learning, and proprietary statistical modeling to give specialty pharmacies more control over their shipping, revenue, and patient outcomes.  ParcelShield offers the assurance of more on-time patient medication deliveries shielded against human and carrier error, routing road blocks, and weather distress.

11.  Specialty pharmacies manage the handling and service requirements of specialty pharmaceuticals, including dispensing, distribution, reimbursement, case management, and other services specific to patients with rare and/or chronic diseases.  Specialty pharmaceuticals tend to be more complex to maintain, administer, and monitor than traditional drugs; therefore, they

require closer supervision and monitoring of a patient's overall therapy. The types of diseases addressed within the scope of specialty pharmacy services include cancer, Crohn's disease, growth hormone deficiency, hemophilia, hepatitis C, HIV/AIDS, infertility, multiple sclerosis, pulmonary hypertension, and rheumatoid arthritis. Specialty pharmaceuticals can cost $1,000 or more per dose, and their delivery to the patient is often required on the committed day.

12.   Plaintiff Knight is an owner of Sunago and the founder of ParcelShield. Knight has over thirty years' experience in the shipping analytics and logistics industry, with experience in creating, licensing, supporting, and managing software solutions used to track and manage shipping operations across various industries.

**B.   The Parties' Mutual History.**

13.   In 2007, Defendant contacted Sunago Systems Group, LLC, in Gresham, Oregon, a predecessor in interest to Plaintiff Sunago, regarding Defendant's interest in reselling ParcelView, a Sunago Systems Group, LLC software product that allowed companies in a variety of industries that ship packages to track their shipments. The parties signed a Non-Disclosure Agreement before discussing business and, in October 2009, entered into a Reseller Agreement, expressly governed by Oregon law, giving Defendant the exclusive right to resell the Sunago software as a service products in a defined territory. That Reseller Agreement expressly recognized that Sunago was the developer and owned "all rights associated with specialized transportation technology related to the tracking and management of packages in the shipping and transportation industry." After Defendant failed to meet the minimum annual sales requirement, in October 2010 Defendant became a non-exclusive reseller but sold few, if any, units after that time.

Page 4   -   COMPLAINT FOR DECLARATORY JUDGMENT

14. In 2012, Defendant again contacted Plaintiff Knight at his new company, Plaintiff Sunago Systems, Inc., in Oregon, this time about using Plaintiffs' software to help track specialty pharmacy orders.

15. From February 15 to February 17, 2012, Defendant's employees Dennis Brinkhus and Micki Miller visited Plaintiff Sunago in Oregon to analyze whether or not Sunago's technology might work for the specialty pharmacies business.

16. From December 8 to December 10, 2012, Defendant's employees Stacey Biehl and Christy Moore visited Plaintiff Sunago in Oregon to continue analyzing whether or not Sunago's technology might work for the specialty pharmacies business.

17. Ultimately, Plaintiff Sunago provided Defendant its software as a service (the "Sunago Service") to allow it to track parcels. In return, Defendant paid 10% of revenue on each order where the Sunago Service was used. When Defendant changed how it charged in order to hide revenue from Sunago, the parties moved to a straight per package fee, which started at 5 cents and went up to 9 cents shortly before the end of the parties' relationship. Sunago Services were provided exclusively from Sunago's servers located in Oregon, and via Surago support staff, all of whom were located in Oregon.

18. In 2014, as Defendant's business expanded, Defendant's CEO Doug Dawson and Senior Vice President Josh Hobick visited Sunago in Oregon to discuss the parties' working relationship.

19. Ultimately, Defendant offered to buy and merge Plaintiff Sunago into Defendant, with Plaintiff Knight to join Defendant as President. In connection with that effort, Defendant's CEO Doug Dawson again visited Plaintiff Sunago in Oregon in 2015, this time to finalize merger details. Defendant even announced internally that the merger was underway and that Mr. Knight

Page 5   -   COMPLAINT FOR DECLARATORY JUDGMENT

was to join Defendant shortly. Operations for the specialty pharmacy business were to be consolidated in Oregon, and all Sunago employees were to continue to work from Oregon.

20. The parties negotiated and agreed to a list of preliminary terms governing the merger but Defendant would not sign any letter of intent or other legally binding document. After several months, Sunago concluded that Defendant had no intent to buy Sunago or to bring on Sunago employees. Sunago then told Defendant that it wanted a written agreement covering Defendant's future resale of the Sunago Service and gave Defendant until the end of 2015 to agree to and sign such an agreement.

21. Rather than sign an agreement governing its resale of the Sunago service, Defendant hired another vendor to develop software intended to replicate the Sunago's functionality.

22. As promised, Sunago stopped providing Defendant with the Sunago Service on December 31, 2015. Aware of the encroaching deadline, in the final months of 2015 Defendant switched to new software made by a different vendor, and began offering a competing software based service to its customers.

**C.     The Parties' Competition.**

23. Following the termination of their business relationship on December 31, 2015, Defendant and Sunago competed with one another in the sale of automated parcel management services to large and small specialty pharmacies (the "Relevant Market").

24. In 2016, Plaintiff Knight founded Plaintiff ParcelShield to work with specialty pharmacies to track orders and anticipate trouble in the delivery chain.

25. Following the formation of ParcelShield, ParcelShield began competing with Defendant in the Relevant Market.

D. **Defendant's 2016 Litigation and Illegal Settlement.**

26. In or about January 2016, following a demonstration of its product at a trade show, ParcelShield and a specialty pharmacy company called Prime Therapeutics, (which at the time was a customer of Defendant), entered into discussions about Prime Therapeutics using ParcelShield services. Eventually, Prime and ParcelShield entered into a contract in June 2016. Prime Therapeutics was ParcelShield's first customer.

27. Without any advance notice, on June 9, 2016, Defendant sued each of the Plaintiffs plus Sunago Systems Group, LLC, alleging eight causes of action ranging from breach of oral contract to interference with contract to misappropriation of trade secrets. On information and belief, Defendant's strategy in bringing the lawsuit was to drive Plaintiffs out of business, and out of competition with Defendant, by forcing them to incur substantial legal fees and costs.

28. Before discovery or preparation of an Answer, Plaintiffs were invoiced by their Midwest law firm in excess of $100,000 in fees and costs incurred. Unable to pay that bill, much less future litigation costs, Plaintiffs were forced to enter into settlement negotiations to resolve Defendant's meritless claims and stop incurring legal expenses.

29. At the time Defendant filed suit, the ParcelShield specialty pharmacy services business was just getting underway and Plaintiffs were unable to pay to defend against Defendant's many outrageous claims. Plaintiffs were faced with either settling the case and staying in business or being forced out of business by the costs of litigating. Notwithstanding the lack of merit in Defendant's claims, and in order to avoid being driven out of business, Plaintiffs signed an agreement dated May 24, 2017 (the "Settlement Agreement") that, among other things, prohibited Plaintiffs from providing services to a number of the largest specialty pharmacies in

the country for a period of time (the "Noncompetition Covenant"). Defendant thereby achieved its goal of squelching competition .

30. Prior to December 31, 2015, the relationship between Sunago and Defendant was solely one of vendor and customer, as evidenced by the fact that Sunago developed the Sunago Service and the Defendant acted solely as a reseller for Sunago. After December 31, 2015, Sunago and Defendant became competitors.

31. Since its formation in 2016, ParcelShield and Defendant have been competitors.

32. The Noncompetition Covenant is not reasonably supported by the prior business relationship between Plaintiffs and Defendant or reasonably protective of any legitimate business interest of Defendant.

33. The Noncompetition Covenant constitutes an agreement between direct competitors to allocate customers, violates federal and state antitrust law, and is unenforceable.

**E.    ParcelShield is Solicited by a Prohibited Customer.**

34. ParcelShield was recently approached by a customer that Plaintiffs are prohibited from serving under the Settlement Agreement. That customer contacted ParcelShield in Oregon and expressed an urgent interest in moving its business from Defendant to ParcelShield as specialty pharmacy tracking vendor, due to Plaintiffs' far superior and more reliable service.

35. ParcelShield is capable of providing services to that customer and wishes to do so.

36. On July 31, 2018, Plaintiff Knight and ParcelShield CFO, Brian Thompson, spoke over the telephone with Defendant's CEO and co-founder Doug Dawson about the approach by the prohibited customer. Knight and Thompson explained their view that ParcelShield is free to take that business because the Settlement Agreement's prohibition on competition is unenforceable.

Page 8   -   COMPLAINT FOR DECLARATORY JUDGMENT

37. Mr. Dawson disagreed that the Settlement Agreement is unenforceable.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment)

38. Plaintiffs hereby incorporate by reference the allegations in Paragraphs 1 - 37. above.

39. There is a real, immediate, substantial and justiciable controversy over whether the Settlement Agreement's prohibition on Plaintiffs doing business with specified customers for a period of time is unenforceable as an illegal restraint of trade under the antitrust laws of the United States.

40. There is a real, immediate, substantial and justiciable controversy over whether Plaintiffs are free to do business with any entity they please.

41. Plaintiffs request a judicial declaration that Section 4 of the Settlement Agreement prohibiting Plaintiffs from doing any business with listed customers for a specific period of time is unenforceable as an illegal agreement between direct competitors to allocate customers in violation of federal and state antitrust law.

42. Plaintiffs request a judicial declaration that Plaintiffs are free to do business with any entity they please.

## PRAYER FOR RELIEF

Plaintiffs pray for entry of judgment in their favor as follows:

1. Declaring that Section 4 of the May 24, 2017 Settlement Agreement between the parties is unenforceable as an illegal restraint of trade and that Plaintiffs are free to do business with any entity they please;

      2.      Awarding costs to Plaintiffs as the prevailing parties, as deemed appropriate by the Court; and

      3.      Awarding such other and further relief as is necessary or proper under the circumstances.

## JURY DEMAND

Plaintiffs hereby demand trial by jury on all questions so triable.

DATED:  July 31, 2018.

          STOEL RIVES LLP

          /s/ Steven T. Lovett
          STEVEN T. LOVETT, OSB No. 910701
          steve.lovett@stoel.com
          RACHEL E. LEE, OSB No. 102944
          rachel.lee@stoel.com
          Telephone:  503.224.3380

          Attorneys for Plaintiffs